## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PRODUCTOS LAMINADOS DE MONTERREY S.A. DE C.V., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 25-00195 |

## COMPLAINT

Plaintiff Productos Laminados de Monterrey S.A. de C.V ("Prolamsa" or "Plaintiff"), by and through the undersigned counsel, White & Case LLP, alleges and states as follows:

## ADMINISTRATIVE DECISION TO BE REVIEWED

1. Plaintiff contests the final results issued by the International Trade Administration of the Department of Commerce ("Department") in the seventh administrative review of the antidumping duty order covering heavy walled rectangular carbon welded steel pipes and tubes ("HWRT") from Mexico (Case No. A-201-847) as they relate to HWRT produced and/or exported by Prolamsa. The period of review ("POR") was September 1, 2022 through August 31, 2023. Notice of the final results was published in the *Federal Register* on July 24, 2025.[1] *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg. 34,842 (July 24, 2025) ("*Final Results*"); *see also* accompanying *Issues and Decision Memorandum for the Antidumping Duty Administrative*

---

[1] On August 19, 2025, the Department published a notice of correction to the *Final Results*, correcting the cash deposit rate for non-selected producers for whom the review was rescinded. *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Final Results of Antidumping Duty Administrative Review; 2022– 2023; Correction*, 90 Fed. Reg. 40,331 (Aug. 19, 2025). This correction did not affect the *Final Results* as they relate to Prolamsa.

*Review: Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico; 2022-2023* (July 24, 2025) ("*I&D Memo*").

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended ("Tariff Act"), codified as 19 U.S.C. § 1516a(a)(2)(B)(iii).

## STANDING OF PLAINTIFF

2. Plaintiff is a Mexican producer and exporter of merchandise subject to the antidumping duty order at issue. Plaintiff participated in the Department's administrative review that resulted in the contested *Final Results*. Plaintiff therefore is a party to the proceeding and an "interested party" within the meaning of Section 771(9)(A) of the Tariff Act, as amended, 19 U.S.C. § 1677(9)(A). Accordingly, Plaintiff has standing to bring this action pursuant to Section 516A(d) of the Tariff Act, as amended, 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

3. The *Final Results* were published in the *Federal Register* on July 24, 2025. The *Final Results* involve a "free trade area country," within the meaning of 19 U.S.C. § 1516a(f)(9) and § 1516a(g); therefore, Plaintiff filed its Notice of Intent to Seek Judicial Review with the U.S. and Mexican Secretaries to the United States-Mexico-Canada Agreement on August 13, 2025, which is within the deadline prescribed by 19 U.S.C. § 1516a(g)(3)(B) (*i.e.*, within 20 days after the date the contested determination was published in the *Federal Register*). Plaintiff filed the Summons on September 3, 2025 (*i.e.*, within 30 days of the 31st day after which the contested determination was published in the *Federal Register*, as specified in 19 U.S.C. § 1516a(a)(2)(B)(iii) and 1516a(a)(5)(A)). Plaintiff is filing this Complaint on October 3, 2025 (*i.e.*, within 30 days

following the filing of the Summons, as specified in 19 U.S.C. § 1516a(a)(2)(A)).  Therefore, this action is timely.

## PROCEDURAL HISTORY AND BACKGROUND

4. Pursuant to requests by Prolamsa and Nucor Tubular Products, Inc. ("Petitioner"), the Department initiated the seventh administrative review of Prolamsa on November 15, 2023. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 78,298, 78,300 (Nov. 15, 2023).

5. The Department named Prolamsa as a mandatory respondent and issued the questionnaire to it on January 11, 2024. *Memorandum to Minoo Hatten, Re: Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Respondent Selection for the 2022-2023 Antidumping Duty Administrative Review*, Jan. 11, 2024 (ACCESS Barcode 4489527-01); Letter to White & Case LLP, from Sec'y Commerce, re: *Administrative Review of the Antidumping Duty Order on Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Request for Information*, (A-201-847), Jan. 11, 2024 (ACCESS Barcode 4489488-01) ("*Initial Questionnaire*").  During the administrative review, Prolamsa submitted complete responses to all Department requests for information, including the initial questionnaire and multiple supplemental questionnaires.

6. In its response to Section D of the *Initial Questionnaire*, Prolamsa reported its production costs, including direct material costs ("DIRMAT"), based on the costs recorded in the normal course of business in accordance with Generally Accepted Accounting Principles ("GAAP") in Mexico. *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Response of Productos Laminados de Monterrey S.A. de C.V. and Prolamsa Inc. to Section D of the Antidumping Questionnaire* (A-201-847) (March 18, 2024) ("Section D Response") at D-13

and D-29–D-35 (ACCESS Barcode 4528208-01). Prolamsa provided all additional cost information requested by the Department during the administrative review. *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Response to the Second Supplemental Questionnaire* (A-201-847) (August 6, 2024) (ACCESS Barcode 4610364-01); *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Response to the Third Supplemental Questionnaire* (A-201-847) (Sept. 12, 2024) (ACCESS Barcode 4630622-01).

7. On September 25, 2024, only seven business days prior to the scheduled deadline for the Department's preliminary results for the review, Petitioner argued for the first time that Prolamsa's reported DIRMAT costs should be equalized (or "smoothed") across all HWRT products (defined by control numbers or "CONNUMs") because of alleged variances in DIRMAT costs between similar CONNUMs. *See* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Pre-Prelim Comments as to Prolamsa* (A-201-847) (Sept. 25, 2024) (ACCESS Barcode 4637841-01) ("Petitioner's Comments"). Petitioner relied on an analysis of variances in the reported DIRMAT costs among CONNUMs that shared the same quality coding as support for the argument that Prolamsa's DIRMAT costs "do not reflect the CONNUMs' physical characteristics" and should be smoothed. Petitioner's Comments at 6.

8. On September 30, 2025, Prolamsa submitted rebuttal comments arguing that the Department should not consider Petitioner's untimely request, which left the Department with no time to investigate Petitioner's allegations, and explaining that Petitioner's analysis was flawed because (1) Prolamsa's reported DIRMAT costs reflected the costs actually incurred for each product in the normal course of business, as recorded in its accounting system; (2) Prolamsa's direct material costs were reported in the DIRMAT field, the DIRMATVAR field (direct materials

variance), and the SCRAPOFFSET field (unit amounts of scrap offset), and Petitioner's analysis had not accounted for the costs reported in two of these three fields; and (3) the analysis failed to account for price differences caused by wall thickness. *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Rebuttal to Petitioner's Pre-Preliminary Comments* (A-201-847) (Sept. 30, 2025) (ACCESS Barcode 4639164-01) at 2–4; *see also* Section D Response at D-43.

9.     The Department issued the preliminary results on October 4, 2024, assigning Prolamsa a dumping margin of 8.13%. *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico: Preliminary Results and Rescission in Part, of the Antidumping Duty Administrative Review; 2022– 2023*, 89 Fed. Reg. 84,530, 84,531 (Oct. 23, 2024) ("*Preliminary Results*"); *see also* accompanying *Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review; 2022-2023: Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico* (Oct. 4, 2024) ("*Preliminary Decision Memo*"). The Department used "the standard COP {cost of production} data submitted by Prolamsa, without adjustment for purposes of the preliminary results." *Preliminary Decision Memo* at 19.

10.    In its case brief, Petitioner again requested that the Department apply a "smoothing adjustment" to Prolamsa's reported DIRMAT costs. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Petitioner's Case Brief* (A-201-847) (November 22, 2024) (ACCESS Barcode 4669203-01) at 6–9 ("Petitioner's Case Brief"). Petitioner relied on a revised DIRMAT variance analysis that accounted for all three fields that reflected direct material costs (DIRMAT, DIRMATVAR, and SCRAPOFFSET) and included the wall thickness CONNUM characteristic. *See* Petitioner's Case Brief at 9, Attachment 2.

11.  In Prolamsa's rebuttal brief, Prolamsa argued that the Department should disregard Petitioner's repeated request for a "cost smoothing adjustment." Letter from White & Case LLP to Sec'y Commerce, re: *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Rebuttal Brief* (A-201-847) (Nov. 27, 2024) (ACCESS Barcode 4671677-01) at 2–6 ("Prolamsa Rebuttal Brief"). Prolamsa noted that its reported costs met all statutory requirements, because they were reported as kept in the ordinary course of business and in accordance with Mexican GAAP. *See* Prolamsa Rebuttal Brief at 2–3. Moreover, because Petitioner made its request so late in the review, there was not adequate information on the record to determine whether cost smoothing was warranted nor enough time for the Department to request and analyze such information. *See id.* at 2–4. Thus, Prolamsa argued that cost smoothing under these circumstances would be contrary to law, because it would require the Department to reject Prolamsa's reported cost data and essentially apply "facts available" without having issued the statutorily required request for clarification or revision of the reported data. *Id.* at 5–6.

12.  The Department issued the final results on July 21, 2025, assigning Prolamsa a much higher final dumping margin of 14.03% and significantly increasing the antidumping duties to be collected on imports during the POR. *See Final Results* at 34,843. In the *Final Results*, the Department found for the first time that "Prolamsa's reported DIRMAT costs reflect cost differences that do not relate to Commerce's designated product physical characteristics, and thus, do not reasonably reflect the costs associated with the production and sale of merchandise under consideration." *Final IDM* at 15 (Comment 4). Based on this finding the Department "appl{ied} the cost smoothing methodology to Prolamsa's reported DIRMAT." *Id.* First, the Department flagged which "CONNUMs had a variance greater than plus or minus ten percent" based on shortened or "Smoothed" CONNUMs that only included "the five qualities {the Department}

6

determined to have a potential impact on cost: Quality, Paint, Thickness, Scarfing, and Further Processing." *Memorandum to the File, Re: 2022-2023 Antidumping Duty Administrative Review of Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Final Results Margin Calculation for Productos Laminados de Monterrey S.A. de C.V.*, July 21, 2025 (ACCESS Barcode 4799475-01) at 2 ("Calculation Memorandum"). For any Smoothed CONNUM that contained a flagged quantity, the Department replaced Prolamsa's reported direct material costs "(the combination of DIRMAT, SCRAPOFFSET, and DIRMATVAR)" with "the average . . . {direct material costs} . . . calculated for that Smoothed CONNUM . . . while all other CONNUMs continued to use their initially reported {costs}." Calculation Memorandum at 2–3.

13. The Department dismissed Prolamsa's concerns regarding the timing of Petitioner's request for smoothing. *See Final IDM* at 14–15 (Comment 4).

14. Finally, the Department claimed that applying its cost smoothing analysis to Prolamsa's costs was not akin to applying facts available to Prolamsa. The Department claimed it was not disregarding Prolamsa's reported costs, but rather was adjusting them according to its own methodology. *Id.* at 15.

## STATEMENT OF CLAIMS

### COUNT 1: THE DEPARTMENT'S DECISION TO MODIFY PROLAMASA'S PRODUCTION COSTS WAS NOT IN ACCORDANCE WITH LAW AND WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

15. Paragraphs 4 through 14 are incorporated by reference.

16. The Department's decision to "smooth" Prolamsa's reported costs across CONNUMs was not in accordance with law and not supported by substantial evidence.

17. The statute requires the Department to rely on the respondent's reported costs if: (1) such costs are based on records kept in accordance with the home country's GAAP; and (2) such costs

7

reasonably reflect the costs associated with the production and sale of the merchandise. 19 U.S.C. § 1677b(f)(1)(A). Prolamsa conducted its accounting in accordance with Mexican GAAP and reported CONNUM-specific costs to the Department using the data recorded in that accounting system.

18. As recently established in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority . . . ." *Id.* at 412. If the agency's interpretation of the law "is not the best, it is not permissible." *Id.* at 400.

19. The Department's interpretation of the statute as permitting it to "smooth" costs under the circumstances of this review was "not the best" interpretation and, therefore, was not permissible and not in accordance with law. Moreover, the Department's decision to "smooth" Prolamsa's costs was not supported by substantial evidence.

## **PRAYER FOR RELIEF AND JUDGMENT**

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)   Enter judgment in favor of Plaintiff;

(B)   Hold and declare that the Department's *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law;

(C)   Remand this matter to the Department to issue revised final results in conformity with the Court's decision; and

(D)   Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

 /s/ David. E. Bond
David E. Bond
Allison J.G. Kepkay

                                          Cristina M. Cornejo
                                          WHITE AND CASE LLP
                                          701 Thirteenth Street, NW
                                          Washington, DC 20005
                                          (202) 626-3600

Date:  October 3, 2025

AMERICAS 103478851 v1